(No. 29817—

W. H. DYER, Trustee, Appellee, *vs.* SHIRLEY B. PADDOCK *et al.*—(BARTON HINKLE *et al.,* Appellants.)

*Opinion filed November 20, 1946.*

■■■■■

VICTOR N. CARDOSI, guardian *ad litem* and trustee, of Kankakee, for appellants.

DYER & DYER, (W. H. DYER, *pro se,*) both of Kankakee, for appellee.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This is an appeal from a decree entered in the circuit court of Kankakee county. It directed W. H. Dyer, as trustee of a trust created by the will of Daniel H. Paddock, to sell at private sale certain real estate belonging to the trust. Testator died more than forty years ago leaving Kate B. Paddock, his widow, and seven daughters. At the time of his death one daughter, Helen B., was married and had removed from the family home. The others ranged in age from eleven to twenty-five, three of them being minors. They all resided at home. Testator owned lots 6, 7 and 8 in block 79 in Associates Addition to the city of Kankakee. These lots were improved with four duplex houses and will be referred to herein as parcel No. 1. He also owned and occupied as a homestead lot 6 and a small portion of lots 5 and 7 in Van Meter and True's Addition to Kankakee. These lots will be referred to as the homestead.

The will was admitted to probate February 5, 1906. The trust created by the second clause included both real and personal property as the *corpus* of the estate. The fifth clause directed the trustees named to hold the property "until the decease of my last surviving unmarried daughter, issue of my body, or until my said daughters shall be married, and my wife's decease, and they shall have power to rent, collect and improve said property from the

fund of my estate, as they shall deem proper, collect the issues and profits thereof, and invest my personal estate, in such way, as they shall deem proper, and from the net proceeds thereof, they shall pay to my wife, at least annually, one-third ($\frac{1}{3}$) of the net income thereof, and the remainder shall be paid over equally by my said trustees to my surviving daughters, except Helen, equally." The sixth clause directed that "At the decease of my last surviving unmarried daughter, or when my daughters shall all be married, and when my wife, Kate B. Paddock shall be deceased, then all of the said estate * * * shall be divided * * *." The division directed was to the several daughters in equal shares with various amounts to be charged against certain shares. The will provided that "If any of my said daughters shall decease leaving issue of the body, then that issue shall take the share the mother would have taken per stirpes, and not per capita." It further provided that the trustees at the time of division of the estate or their successors in trust should have the power to convey in fee or otherwise, as the necessities of the case might require. The fourteenth clause directed that when any daughter married, her right to occupy the homestead should cease during the life of the widow or the occupancy of any unmarried daughter. By the twenty-sixth clause, testator expressed his intent to vest the fee to all the real estate in the trustees named and their successors in trust, to hold in trust for the uses and purposes stated in the will, and by the succeeding paragraph the trustees were authorized "to use sufficient of the income to keep the property in necessary repair, and insured, and generally to manage it to the best interests in trust."

The widow died in 1916 and sometime thereafter the daughter Helen B. died, leaving two children both of whom were adults. All the other daughters except Shirley are married and have children. Shirley is 65 years old and continues to occupy the homestead. By reason of deaths

among the trustees and resignations, plaintiff, W. H. Dyer, is the successor trustee, a position he has held for about ten years.

The facts stated in the complaint and those established by the evidence show that plaintiff has an opportunity to sell parcel No. 1 to the Sinclair Refining Company for $48,000; that the said company has made a partial payment of $5000 as earnest money, that he has an opportunity to sell the homestead to Bernie Stevens for $11,162.50, and that the said Stevens has paid $1000 as earnest money on the purchase price. The consummation of both sales has been made subject to court authorization and approval of the acts of the trustee.

All the living lineal descendants of testator are parties defendant. They consist of six daughters, fourteen grandchildren and nine great grandchildren. All defendants, except two, who are of legal age, entered their appearance and consented to a decree as prayed. The excepted two entered their appearance but consented only to an immediate hearing. Victor N. Cardosi was appointed guardian ad litem for all minor defendants and trustee of the interest of all persons not in being who might become entitled to any future interests, legal or equitable, in said estate. Shirley Paddock gave her written consent to the sale of the homestead property disencumbered of her right under the will to occupy it as a residence. The chancellor awarded the relief prayed. This appeal has been perfected by the guardian ad litem on behalf of all minor defendants and the interest of all persons not in being who might by any contingency become entitled to any future interests legal or equitable.

Appellants contend the will does not confer any authority on the trustee to sell the real estate before the happening of the condition on which the final disposition may be made. It is argued the decree authorizing the sale in effect alters the trust by substituting personal property

for the *corpus* of the trust in lieu of the real estate, and that such conversion is contrary to the intent of the testator as shown by the will. In reply appellee urges two general propositions. He contends the purpose for which the trust was created, the duties imposed on the trustee and the character of title vested in the trustee all evidence an intent to give the trustee power to sell and dispose of the fee-simple title even though the condition after which final settlement is to be made has not happened. His second proposition is that the evidence shows that an exigency exists which requires the aid of a court of equity, and that if it is not granted, the trust estate will suffer irreparable loss. It is argued that the granting of such relief is inherent in a court of equity to preserve trust estates and to order a sale of trust property under such circumstances. It is also contended that the facts of this case bring. it within the provisions of section 50 of the Chancery Act (Ill. Rev. Stat. 1945, chap. 22, par. 50,) and that by virtue of such provision the court had ample power to order the sale.

The relief granted by the decree is predicated on findings of fact that show the buildings are old, out of repair, and that the surrounding conditions are such that if the proposed sales are not approved, the trust estate will suffer loss. The evidence sustains such findings and the application of well-established principles of equity support the decree, so that the cause may be determined on the theory adopted by the chancellor. It will not be necessary to construe the will to determine the extent of the trustee's power to sell.

The evidence shows that when testator died parcel No. 1 was located in a residential district, that the duplex houses were desirable for residential purposes but that the lapse of time has changed the character of the district so that it is no longer suitable for residential purposes, that parcel No. 1 is almost wholly surrounded by commercial establish-

ments. It also appears that in recent time the district has been zoned for commercial purposes. The buildings on this parcel were erected more than fifty years ago, and although they were constructed in accord with approved methods of that time, they do not meet the structural requirements of the present age and have, therefore, lost their attractiveness for residential purposes. The evidence shows that the exterior of the buildings needs much repair, especially the porches and steps, and that all are in need of paint. The interior needs redecorating, new plumbing should be installed in certain parts, some of the duplexes need new heating plants and others need repair. It is estimated the cost of reconditioning the buildings would be at least $10,000. It does not appear that such estimate would include the cost of rejuvenation to meet modern methods of construction.

It is shown that the homestead property was also erected more than fifty years ago, that the basement walls are crumbling, it needs a new roof, the porch should be torn down and replacements made. It needs paint inside and out. The estimated cost of reconditioning it is fixed at five to six thousand dollars.

The gross monthly income of parcel No. 1 is $263, the annual taxes approximately $650 and insurance $80. The homestead property being occupied by Shirley Paddock under the will, no income is received from it. The trustee testified that he had approximately $2000 in his current account, that governmental rent regulations had prohibited the increase of rentals to meet the increased costs of repairs, and that there were no funds available to make the repairs needed except from certain personal property which is a part of the *corpus* of the trust.

The conclusion to be drawn from the evidence is that the price offered by the Sinclair Refining Company for parcel No. 1 is above the normal cash market value; that said parcel is so surrounded by buildings used for com-

mercial purposes, that if all needed repairs were added, it would not increase their rental value for residence purposes in proportion to the cost of such repairs; that the highest and best use of the lots is for a commercial· purpose; that if the bid offered is not accepted the trust will lose the opportunity to dispose of the property at such advantageous. price; that the price offered by Stevens for the homestead is above its normal cash value, that the dwelling thereon is in a bad state of repair and that delay will soon render the building of no value. It is obvious the trust estate will benefit by Shirley's release of her right of occupancy given under the will.

Two questions are presented for consideration. The first refers to the power of a court of equity to enter a decree modifying the terms of the trust, and second, if the court has such power are the facts presented in this record sufficient to warrant an exercise of that power?

That a court of equity has power to modify a trust under certain conditions is well established by the cases. (*Clarke* v. *Chicago Title and Trust Co.* 393 Ill. 419; *Cary* v. *Cary,* 309 Ill. 330; *Johns* v. *Montgomery,* 265 Ill. 21; *Roberts* v. *Roberts,* 259 Ill. 115; *Gavin* v. *Curtin,* 171 Ill. 640; *Curtiss* v. *Brown,* 29 Ill. 201.) The general rule is that a court of equity has the power to direct a conversion of real estate into personal property and *vice versa,* and to direct other modifications of the trust if it appears necessary that such action be taken to preserve the trust estate. The power is exercised with caution and cannot be used to authorize a conversion of real estate into personal property or other modification merely for the purpose of enabling the beneficiaries to receive a greater income or to use it in what they may regard as a more profitable manner than that contemplated by the trust instrument. (*Johns* v. *Johns,* 172 Ill. 472.) The rule which supports an exercise of the power must be based on facts showing that conditions have arisen or exigencies developed which could

not have been foreseen by the donor and that as a result of such unforeseen conditions the beneficiaries will suffer loss. (*Johns v. Montgomery,* 265 Ill. 21.) The power a court of equity may exercise under such conditions is inherent in the jurisdiction that it exercises over trusts generally.

The facts shown in this record make a case for an exercise of the power. The shift of the district in which parcel No. 1 was located from a residential area to commercial could not have been foreseen when the trust was created, nor was it possible to anticipate that the use of the surrounding property would be restricted by zoning ordinances. The outmoded style of construction of the buildings, including the homestead, their deteriorated conditions and the condition of the trust estate aids in the making of a case where equity should authorize the sale.

The decree is supported by the provisions of section 50 of the Chancery Act. It provides: "Where lands or any estate therein are subject to contingent future interest, legal or equitable, whether arising by way of remainder * * * and whether a trust is involved or not, and it is made to appear that such lands or estate are liable to waste or depreciation in value, or that the sale thereof and the safe and proper investment of the proceeds will inure to the benefit and advantage of the persons entitled thereto, or that it is otherwise necessary for the conservation, preservation or protection of the property or estate or of any present or contingent future interest therein that such lands or estate be sold * * * the court shall have power * * * to authorize and direct the sale of such property, either at public sale or at private sale, * * *." There are possible contingent remaindermen interested in this property and the statute has direct application.

The decree of the circuit court is correct and will be affirmed.

*Decree affirmed.*