474 A.2d 221

Ellis R. PROBASCO

v.

John E. CLARK, Trustee, et al.

No. 4, Sept. Term, 1984.

Court of Special Appeals of Maryland.

May 4, 1984.

Frederick J. Hatem, Jr., Bel Air, with whom were Thomas E. Marshall and Hatem, Kelly, Baldwin & Marshall, Bel Air, on brief, for appellant.

John E. Clark, Bel Air, and William B. Stansbury, Jr., Towson, for appellees.

Argued before GILBERT, C.J., and LISS and GETTY, JJ.

GILBERT, Chief Judge.

It is highly doubtful that when Herbert L. Armstrong created a simple testamentary trust leaving an income to his son for life and the remainder to a church that he foresaw that such a straightforward bequest would lead to this litigation.[1]

This case is a variation of the old saw, "Where there is a will, there are relatives." Here there is a relative who seeks to uphold the provisions of a testamentary trust and a remainderman that desires to accelerate its acquisition of the corpus of the trust. The concept of the old adage, nevertheless, remains the same.

From the record and stipulation in lieu of a transcript,[2] we learn that Herbert L. Armstrong died in 1971. In the first codicil to his will, Armstrong provided:

"All the rest, residue and remainder of my estate and property, real, personal and mixed, of whatsoever kind, and wheresoever situate, which I may own or have the right to dispose of at the time of my death, I direct shall be paid over to the hereinafter named Trustee, for the use and benefit of my son, Ellis Russell Probasco (formerly Ellis Herbert Armstrong), who shall receive out of interest and principal the sum of Three Hundred Dollars

---

**1.** This appeal reaches us by way of an expedited appeal. *See* Md.Rule 1029.

**2.** Md.Rule 1029 b.

($300.00) each month during the remainder of his life or until trust funds have been exhausted, and the remainder of said trust funds, upon death or failure of said trust shall be paid over to the aforementioned Bel Air Methodist Church." [3]

The sum of $187,551.38 was distributed to the named trustee, John E. Clark,[4] and at the time the petition was filed in the instant case, the corpus had grown to $267,826.97.

The remainderman, now known as Bel Air United Methodist Church. (Church), was or is "in the process of a building expansion program" and believed that "an early acceleration of the termination of the trust would greatly benefit and serve fully the intent and purpose of the Testator [Herbert L. Armstrong]." Accordingly, it, together with the trustee, petitioned the Circuit Court for Harford County to "terminate the trust" by ordering the trustee to pay "over to the remainder beneficiary," the Church, the balance of the trust estate "less appropriate costs." To assure the continuation of the $300.00 per month payments to the life beneficiary, Ellis R. Probasco, the Church proposed that the trustee "purchase an annuity from a reliable insurance company as approved" by the court.

The petition further averred that the costs of administering the trust had "increased and the current trustee's commissions are approaching nearly Three Thousand ($3000) [sic] Dollars a year."

Probasco, who lives in Lynchburg, Ohio, responded to the petition and interposed an objection. He said through Ohio counsel that:

"Ellis Russell Probasco is not interested in anything except the strict provisions of the Will of his father. He believes in the permanency and sanctity of the Will of

---

3. The clause in the original will was identical, except that the amount paid to Probasco was $150.00 per month.

4. Mr. Clark is one of the appellees.

Herbert Armstrong.  Ellis Russell Probasco insists that the Will be carried out to the letter, without exception, and he is opposed to any Accelleration of the Remainder to the Bel Air United Methodist Church, the Remainderman of the Trust.  Ellis Russell Probasco expects the Will to be carried out and to receive from the Trust $300 per month so long as he shall live, and is not interested in any type of annuity nor going past or beyond the terms and provisions of his father's Will, which was a determined and studied effort of Herbert Armstrong with the assistance of John E. Clark."

The case was "tried" before the court on "stipulations," which in essence are the facts as we have stated them. After the hearing, the chancellor decreed that the trustee was authorized to purchase an annuity from an approved insurance company.  The annuity is to pay $300.00 per month to Probasco for the remainder of his life.  As an underpinning of the annuity, the judge ordered that $50,000 of the corpus of the trust was to be retained in trust so to guarantee the monthly payments to Probasco.  The decree further provided that the Church was to be liable for the monthly payments to Probasco in the "unlikely event of a failure of the insurance company" or the depletion of the remaining trust funds.

Discontent with that ruling, the life beneficiary has appealed to this Court.

■■■  Although courts of equity are possessed of the awesome power of reformation of instruments, that power is not extended to wills.  *Shriners Hospital v. Maryland National Bank,* 270 Md. 564, 581, 312 A.2d 546 (1973). Courts do, however, have the inherent power to modify a trust so long as that authority is exercised with caution and not employed merely as a tool or device to enable beneficiaries to receive a greater income or use of trust property than was intended by the settlor.  *Dyer v. Paddock,* 395 Ill. 288, 70 N.E.2d 49 (1946).  Before a court utilizes the inherent power of modification, it must first be satisfied that facts and circumstances exist that could not have been foreseen

by the testator and that as a result of that lack of foresight, the beneficiary will suffer loss. *Johns v. Montgomery,* 265 Ill. 21, 106 N.E. 497 (1914); *Dyer v. Paddock, supra.*

The Supreme Court of North Carolina in *Stellings v. Autry,* 257 N.C. 303, 126 S.E.2d 140 (1962), has said that in order for a modification to be decreed, "it must be made to appear that some exigency, contingency, or emergency has arisen which makes the action of the court indispensable to the preservation of the trust ...." *See also Carter v. Kempton,* 233 N.C. 1, 62 S.E.2d 713 (1950).

In the matter *sub judice,* there has been no showing by the Church that any such facts, circumstances, emergency, contingency or exigency exist. The Church's desire to expand its building simply does not fit within any category that permits a court to modify the testamentary trust created by Herbert L. Armstrong. Indeed, we think that it is entirely possible that the testator foresaw the Church's wish to expand, because the fact that churches ofttimes engage in building programs by way of addition or renovation is hardly novel.

The reluctance by courts to modify the terms of a trust has its genesis in the belief that the wishes of the settlor should be effectuated. Scott, *On Trusts* (3d ed. 1967) § 337 at p. 2655. The settlor can dispose of his property as he likes; his wishes in creating the trust being paramount to the wishes of the beneficiaries. *Id.*

While English courts have traditionally recognized the right of the beneficiaries to compel the termination of a trust, American courts just as traditionally limit a termination of a trust to those situations where *all* beneficiaries consent to the termination, and it is not contrary to the settlor's intention. *Id.*

Generally, where all of the beneficiaries of the trust are *sui generis,* no principle of law is violated; if the objective of the trust has been adhered to, the court may allow the termination of the trust provided all beneficiaries consent. *Altemeier v. Harris,* 403 Ill. 345, 86 N.E.2d 229 (1949). In the absence of an agreement of all interested

parties, the court is without power to modify the trust. *New England Merchants Nat. Bank of Boston v. Kann,* 363 Mass. 425, 294 N.E.2d 390 (1973); *Potter v. McLane,* 247 Mass. 387, 142 N.E. 49 (1924).

The Supreme Court of Pennsylvania said in *Re Bowers' Trust Estate,* 346 Pa. 85, 87, 29 A.2d 519, 520 (1943):

"If all the parties who are or may be beneficially interested in a trust are in existence and sui juris, if there is no ultimate purpose of any kind requiring its continuance, and if all the beneficiaries consent, a court of equity will decree its termination; of course, if there are contingent remaindermen not in existence or not ascertained, the trust cannot be terminated since it is then impossible to obtain the consent of all possible interests."

*See also In Re Kamerly's Estate,* 348 Pa. 225, 35 A.2d 258 (1944).

Of signal importance is the requirement that all of the beneficiaries consent before there can be a termination. In his learned treatise on the law of trusts, Scott says:

"The non-consenting beneficiaries can object, not only where they are deprived of their interests, but where their interests are modified. Thus where a testator bequeaths property in trust to pay the income to one beneficiary for life and on his death to pay the principal to another, the life beneficiary cannot insist on the conveyance to him of a legal life estate or of such part of the property as represents the value of a life interest in the property without the consent of the remainderman, and, *conversely, the remainderman cannot insist upon such a distribution without the consent of the life beneficiary.*" Scott, *On Trusts* (3d ed. 1967) § 340 at p. 2708. (Emphasis supplied.)

What Scott said cannot be done is precisely what the remainderman and trustee prevailed upon the trial court to do despite Probasco's objection.

■ The testator did not express the reason or purpose why he created the trust providing for the monthly stipend to his son for life with the remainder to the Church. From

clear language of the testamentary clause establishing the trust, we must assume that he did not intend for the Church to acquire physical possession of the remainder until after the death of the life beneficiary, Ellis Russell Probasco. It may be that the testator wished the corpus of the trust to appreciate so that when the Church finally receives the money, it will be a much larger sum and, thus, susceptible to more uses. Had the testator wished to give the money to the Church for its immediate use and at the same time to provide for his son Ellis, he could have directed the Church, as a condition precedent, to do exactly what the trial judge attempted to do. We do not know whether Herbert L. Armstrong, if presently alive, would dispose of his estate in a different manner than he did, and it is not for us to speculate as to what he might do in the light of existing circumstances. We do know, however, that when a testator makes a testamentary trust whose meaning is clear, courts should not, over the objection of the life beneficiary, rewrite the trust so as to satisfy a remainderman whose sole interest is in accelerating its physical acquisition of the remaining of the estate. We further know that when we are confronted with such a situation, we shall reverse.

JUDGMENT REVERSED. COSTS TO BE PAID BY THE APPELLEE, BEL AIR UNITED METHODIST CHURCH.