**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1009**

MARY ANNE KIRGAN, as successor trustee of the Clarence Manger and Audrey
Cordero Plitt Trust; ROBERT S. KIRGAN, as successor trustee of the Clarence
Manger and Audrey Cordero Plitt Trust,

        Plaintiffs - Appellants,

v.

MANUFACTURERS AND TRADERS TRUST COMPANY, d/b/a M&T Bank,

        Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at
Alexandria.  Claude M. Hilton, Senior District Judge.  (1:17-cv-00327-CMH-TCB)

Submitted:  March 19, 2020                    Decided:  April 17, 2020

Before WILKINSON, QUATTLEBAUM, and RUSHING, Circuit Judges.

Affirmed by unpublished opinion. Judge Wilkinson wrote the opinion, in which Judge
Rushing joined. Judge Quattlebaum wrote an opinion concurring in part and dissenting in
part.

Michael S. Nadel, MCDERMOTT WILL & EMERY LLP, Washington, D.C., for
Appellants.  John C. Hayes, Jr., Brian J. Whittaker, NIXON PEABODY LLP, Washington,
D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WILKINSON, Circuit Judge:

In this appeal, we determine whether the individual trustees of a charitable trust may remove the corporate trustee without cause. The individual trustees argue that, while they could remove the original corporate trustee only for cause, a merger has made this restriction inapplicable. In contrast, the corporate trustee argues that, by virtue of a merger, it has inherited both the rights and obligations of the original corporate trustee—including the right to be free from removal without cause.

We agree with the corporate trustee, as did the court below. The individual trustees here lack the power to remove the current corporate trustee without cause. Several related issues appealed by the individual trustees are also without merit. For this reason, we affirm the district court's holdings in full.

I.

A.

Clarence Plitt, a Maryland resident, executed a will in 1976 and passed away later that year. In his will, Plitt created the Clarence Manger and Audrey Cordero Plitt Trust (the "Plitt Trust"), a charitable trust which provides educational institutions with grants to be used for need-based loans to students. The will named Plitt's longtime domestic partner Mary E. McC. Kirgan ("Mary Kirgan") as individual trustee and the First National Bank of Maryland ("First National") as corporate trustee. It further directed that, once Mary Kirgan stepped down, two individual trustees would serve along with the corporate trustee.

The will spoke briefly to the individual trustees' ability to remove the corporate trustee:

*The individual Trustees serving at any time hereunder may by their joint action, change any corporate Trustee serving hereunder and appoint a new successor corporate Trustee to serve in its place and stead.* Such action shall be effective upon their delivery of a written instrument to the current corporate Trustee evidencing their decision to terminate its position and status as corporate Trustee and designating and appointing a new successor corporate Trustee.

J.A. 94 (emphasis added). No other references to a "successor corporate Trustee" are found in the will. *See* J.A. 90-94.

Around a decade later, Mary Kirgan and First National jointly petitioned the Circuit Court for Baltimore City to, among other things, have the will "clarified to provide that the Corporate Trustee may only be removed 'for cause.'" J.A. 95-96. The court agreed to this request, issuing an order—using exact wording suggested by the petitioning parties—declaring "that the individual Trustees acting jointly pursuant to [the will] do not have the power to remove the originally named corporate Trustee, except for cause," (the "1985 order"). J.A. 104; *see also* J.A. 100.

A detailed review of First National's corporate history is not needed to understand this case. Suffice it to say, for almost two decades after issuance of the 1985 order, Mary Kirgan and a member of the First National corporate family served without issue as trustees for the Plitt Trust. Two pieces of information are relevant for our purposes. First, in the late 1990s, First National changed its name to Allfirst Bank. Second, in 2003, Allfirst merged with the Manufacturers and Traders Trust Company ("M&T Bank"), setting the stage for the current dispute.

At the time of the merger, Mary Kirgan remained individual trustee for the Plitt Trust. She was sent a notice regarding the Allfirst-M&T merger, which informed her that

4

M&T had assumed the position of "successor fiduciary" for the trust and outlined her ability to object to its appointment. J.A. 107-108. Over a month later, Kirgan's attorney sent M&T a letter requesting that the bank "acknowledge and agree that [Kirgan] . . . and thereafter the successor trustees . . . have the right to replace the corporate trustee including M&T Bank as co-trustee *with or without cause*." J.A. 109-10 (emphasis added). The letter included specified language to this effect, and requested that M&T include that exact language in its response. It also indicated that Kirgan would not object to M&T's appointment if she received a satisfactory response from the bank.

Soon after, M&T sent a letter to Mary Kirgan addressing the individual trustees' removal power. This letter stated that, "[a]t such time as more than one individual co-trustee is serving, the individual co-trustees, acting jointly, have the power to remove and replace M&T (or any other successor corporate co-trustee that may be serving from time to time)." J.A. 114. Notably, M&T's response did not include Kirgan's requested language allowing M&T's removal "without cause." Despite this omission, Kirgan did not object to M&T's appointment.

Mary Kirgan passed away the following year. Her children, Mary Anne Kirgan and Robert Kirgan ("the Kirgans"), became successor individual trustees of the Plitt Trust. Over a decade later, in 2015 and 2016, M&T raised some concerns about the Kirgans' management of the trust and compensation level. Soon after, in late 2016, the Kirgans sent M&T a letter stating that they had elected to remove it as corporate trustee and to replace it with a local bank. M&T responded that it was "unable to comply" with this request

5

because, under the 1985 order, "the individual Trustees may only remove the Corporate Trustee for cause." J.A. 55.

B.

The Kirgans filed suit in the United States District Court for the Eastern District of Virginia. They brought five counts: (I) a request for a declaratory judgment that they had the power to remove M&T as corporate trustee without cause, and had already done so; (II) alternatively, a request for the court to remove M&T as corporate trustee for cause; (III) a breach of contract claim, alleging that M&T had violated an agreement it made with Mary Kirgan in correspondence following the Allfirst merger; (IV) a breach of fiduciary duty claim; and (V) a fraud claim based on the same conduct underlying the breach of contract claim.[1] The Kirgans' complaint concluded with a demand for a jury trial "on all issues so triable." J.A. 46.

The district court resolved Count I in M&T's favor, holding from the bench that M&T could not be removed as corporate trustee without cause. The court noted that the original corporate trustee, First National, could be removed only for cause. It held that M&T, as a "successor trustee" under Maryland law, had "all of the rights, powers, duties, and obligations of the original trustee. And so therefore, the removal for cause applies to the substitute trustee just as it did the original trustee, so the substitute trustee has to be removed for cause." J.A. 370-71.

---

[1] M&T brought several counterclaims against the Kirgans, which were resolved by the district court below and are not relevant to this appeal.

6

Counts III and V, for breach of contract and fraud, were settled in M&T's favor on summary judgment. The district court disagreed with the Kirgans' assertion that the communications between Mary Kirgan and M&T following the Allfirst merger created a contract allowing for the bank's removal without cause. The court found instead that there was no contract, because "there was never any kind of meeting of the minds or any offer or acceptance that comes through" in the two relevant letters. J.A. 371. Likewise, the court disagreed that M&T's post-merger communications contained false representations, instead finding "no evidence of any kind of fraud." J.A. 371.

The district court held a bench trial on Counts II and IV, the request that it remove M&T as trustee for cause and the breach of fiduciary duty claim. The court once again found in M&T's favor. On Count II, the court held "that M&T's actions, taken in whole, do not warrant cause for removal." J.A. 1049. Similarly, on Count IV, the court found that M&T did not breach its fiduciary duty.

The Kirgans now appeal three issues. First, they allege that the district court erred in holding that they can remove M&T only for cause. Second, they argue that the court erred by granting summary judgment on the breach of contract and fraud claims. Third, they claim the court erred by failing to submit the breach of fiduciary duty claim to a jury.

II.

The Kirgans argue that, under the terms of the will and the 1985 order, they may remove M&T as corporate trustee without cause. This is a pure question of law, subject to de novo review. *United States v. Hall*, 972 F.2d 67, 69 (4th Cir. 1992).

7

To make their case, the Kirgans first point to the will, which states that the individual trustees may "change any corporate Trustee serving hereunder and appoint a new successor corporate Trustee to serve in its place and stead," seemingly without requiring cause. J.A. 94. They next direct our attention to the 1985 order, which states that the individual trustees "do not have the power to remove the originally named corporate Trustee, except for cause." J.A. 104. The Kirgans argue that the combined effect of these documents is clear—they can remove any corporate trustee, except First National, without cause.

The Kirgans' argument fails for one reason: it ignores that the will and the 1985 order must be interpreted against the backdrop of laws ensuring the continuity of fiduciary obligations following a merger. These laws show that, by buying out "the Maryland bank who was the original trustee," M&T now "stand[s] in the position of the original trustee." *See* J.A. 323. As such, M&T has the same "rights, powers, duties, and obligations" as First National, including the right to be free from removal without cause. *See* Md. Code Ann., Est. & Trusts § 15-1A-02(b) (West).

Stepping back for a moment, we note that banks cannot merge their way out of fiduciary obligations. *See, e.g.*, Md. Code Ann., Fin. Inst. § 3-712(c) (West); Md. Code Ann., Corps. & Ass'ns, § 3-114(e)-(f) (West); 12 U.S.C. § 215a(e)-(f). The mischief that could occur if merging banks inherited assets, but not obligations or duties, is self-evident. This truism, however, operates as a two-way street. Just as banks obtain obligations and duties through merger, they also obtain corresponding rights and powers. Inherited rights ultimately dictate the result in this case.

8

Because Maryland law controls here, we look to it to determine M&T's fiduciary status and rights post-merger. Under the Maryland Code Estates and Trusts, M&T is a "successor fiduciary" of First National. This code defines a "successor fiduciary" to include "a corporate fiduciary that is substituted for another corporate fiduciary under the provisions of § 15-1A-02 of this subtitle, by reason of . . . [a] merger." Md. Code Ann., Est. & Trusts § 15-1A-01(h) (West). Here, M&T merged with corporate fiduciary Allfirst, which was itself successor fiduciary to First National.

Section 15-1A-02, for its part, outlines the process for such a substitution: "a successor fiduciary shall be substituted as a fiduciary for its predecessor corporate fiduciary, immediately upon the adoption of a corporate resolution" to this effect. Md. Code Ann., Est. & Trusts § 15-1A-02(a). While seeming to concede that M&T is a successor fiduciary, the Kirgans argue that there is no evidence of a corporate resolution sufficient to show M&T's substitution for Allfirst under § 15-1A-02(a).

This gets it wrong. Section 15-1A-01(h) indicates that substitution can occur "by reason of . . . [a] merger." In other words, the merger, and corresponding papers enacting it, may serve as a corporate resolution of substitution. Any other interpretation—in addition to violating the basic principle that fiduciary status transfers with mergers—would create inconsistencies within Maryland law. *See, e.g.*, Md. Code Ann., Fin. Inst. § 3-712(c) (stating that after a bank merger, "[t]he [combined entity] has the same powers that each constituent bank had as to any property held in any fiduciary capacity, *without any deed, transfer, or other action*") (emphasis added). Here, documentation of the M&T-Allfirst

9

merger found in the record is sufficient to satisfy the requirements of § 15-1A-02(a). *See* J.A. 202-14.[2]

As successor fiduciary, M&T has clearly delineated rights under Maryland law. Two provisions of the Maryland Code Estates and Trusts are relevant here. The first provision specifies that, as successor fiduciary, M&T "shall have all the rights, powers, duties, and obligations of the predecessor corporate fiduciary." Md. Code Ann., Est. & Trusts § 15-1A-02(b). This provision makes clear that, under the 1985 order, M&T has the same right to be free from without-cause removal as predecessor fiduciaries Allfirst and First National.

The second provision goes even further. It states that, as successor fiduciary, M&T "shall be deemed named as fiduciary in any writing, including a will, trust, court order, or similar document or instrument that names the predecessor corporate fiduciary as fiduciary, whether executed before or after the successor fiduciary is substituted, unless the writing expressly provides otherwise." Md. Code Ann., Est. & Trusts § 15-1A-02(c). Thus, after the merger, the will must be read to refer to M&T anywhere that First National is named. In effect, the will now states that, "[t]he original Trustees of this trust shall be THE MANUFACTURERS AND TRADERS TRUST COMPANY and MARY E. McC.

---

[2] Even if more were needed, M&T provided notice of the merger to Mary Kirgan. Its notice, which referenced Section 15-1A of the Maryland Code Estates and Trusts, stated: "This is to advise you that effective June 13, 2003, Allfirst Trust Company, National Association was merged with Manufacturers and Traders Trust Company. By virtue of that merger, Manufacturers and Traders Trust Company has assumed the fiduciary duties of Allfirst Trust Company, National Association." J.A. 107-108. This notice itself appears sufficient to show a corporate resolution of fiduciary substitution.

KIRGAN." *See* J.A. 93. The 1985 order clarifies "that the individual Trustees acting jointly pursuant to [the will] do not have the power to remove the originally named corporate Trustee, except for cause." J.A. 104. In sum, § 15-1A-02(c) ensures that M&T, like First National, cannot be removed without cause.

Nothing in the will or the 1985 order "expressly provides" that § 15-1A-02(c)'s naming provision is inapplicable to a successor by merger. When debating this point, the parties occasionally appear hung up on the semantics of whether M&T *is* the original corporate trustee versus whether it should be *treated as* the original corporate trustee. This is a distinction without a difference. Maryland law provides that M&T stands in the shoes of original corporate trustee First National. Nothing in the will or the 1985 order provides otherwise.

The Kirgans assert that the will does provide otherwise, by allowing them to remove a successor corporate trustee without cause. This argument, based on a faulty premise, fails. No one is arguing that the Kirgans lack the power to remove a "successor corporate trustee," as defined by the will, without cause. The problem for the Kirgans is that M&T is not a "successor corporate trustee" under the terms of the will. The will indicates that a "successor corporate trustee" is one appointed by the individual trustees after their removal of the prior corporate trustee. *See* J.A. 94. M&T does not satisfy this definition, because it was not appointed by the Kirgans after removal of a prior corporate trustee. Instead, it inherited its position as trustee through merger.

M&T's status as a "successor fiduciary" under Maryland law does not somehow convert it to a "successor corporate trustee," subject to removal without cause, under the

11

will. Maryland law ensures the opposite result: by requiring that M&T be treated as the original corporate trustee, it provides M&T freedom from removal without cause.[3]

III.

The Kirgans next argue that the district court erred in granting summary judgment for M&T on the breach of contract and fraud claims. "Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996) (quotation omitted). In our review, we draw all reasonable inferences in favor of the Kirgans as non-moving party. *Roe v. Doe*, 28 F.3d 404, 406-407 (4th Cir. 1994). We find, once again, that the district court did not err.

A.

The Kirgans argue that, after the Allfirst merger, communications between M&T and Mary Kirgan created a contract allowing the individual trustees to remove M&T as corporate trustee without cause. The Kirgans follow that, at the very least, these communications show substantial evidence of a contract such that the breach of contract claim should have gone to a jury instead of being resolved on summary judgment.

When granting summary judgment for M&T, the district court described why no reasonable jury could have found a contract created by the post-merger letters:

---

[3] The Kirgans' assertion that M&T, due to its post-merger communications, is estopped from arguing that it cannot be removed without cause under the terms of the will and the 1985 order is discussed *infra* Section III.

> There just isn't sufficient evidence to make such a finding.
>
> I think it's clear after studying both of these letters that these were discussions between the parties about the trustee and maybe some other issues as well, but there was never any kind of meeting of the minds or any offer or acceptance that comes through . . . .

J.A. 371.

When Mary Kirgan and her attorney reached out to M&T, they requested that the bank "acknowledge and agree" that the individual trustee or trustees had the power to remove it "with or without cause." J.A. 109. Their letter contained specified language to this effect, and requested that M&T include that exact language in its response.

M&T's response did not contain the requested language. Nor did it address the trustees' ability to remove the corporate trustee without cause. It acknowledged, instead, that "[a]t such time as more than one individual co-trustee is serving, the individual co-trustees, acting jointly, have the power to remove and replace M&T." J.A. 114. For all intents and purposes, M&T's letter tracked language in the will without elaboration; it certainly did not address without-cause removal or the impact of the 1985 order on the will. Because there was no meeting of the minds on the individual trustees' power to remove M&T without cause, no contract concerning this power was created. *See Pavel Enters., Inc. v. A.S. Johnson Co.*, 674 A.2d 521, 531 (Md. 1996).

Even if there had been a meeting of the minds, there is a second reason to be wary of finding an enforceable contract here. As discussed *supra* Section II, the combined effect of the will and the 1985 order prevents M&T from being removed as corporate trustee without cause. As such, Mary Kirgan's letter to M&T after the Allfirst merger was, in

13

effect, a request to modify the terms of the trust. Maryland law, understandably, discourages trustees from altering the terms of a trust without court involvement.

Maryland law provides that "ordinarily, trustees *should* seek prior approval of the court before deviating from the precise terms of the [trust] instrument." *Gordon v. City of Baltimore*, 267 A.2d 98, 111 (Md. 1970). Further, a court is not required to accept changes that trustees agree to amongst themselves. *Id.* This likely explains why, in 1985, the trustees jointly petitioned the Circuit Court for Baltimore City to modify the terms of the Plitt Trust rather than attempting to do so themselves through contract.

Even courts lack the power to modify the terms of a trust unless "facts and circumstances exist that could not have been foreseen by the testator and that as a result of that lack of foresight, the beneficiary will suffer loss." *Probasco v. Clark*, 474 A.2d 221, 223 (Md. Ct. Spec. App. 1984); *see also Shriners Hosps. for Crippled Children v. Md. Nat'l Bank*, 312 A.2d 546, 551-52, 555-56 (Md. 1973). It can hardly be said that bank mergers are unforeseeable. Nor does granting the individual trustees enhanced removal power unambiguously support the trust's beneficiaries and mission. Because a court would have lacked the power to modify the terms of the Plitt Trust as requested by Mary Kirgan after the merger, the trustees acting alone certainly would have lacked the ability to do so through contract.

B.

The district court did not err by granting summary judgment for M&T on the fraud claim. This claim, which was based on the same post-merger communications as the breach of contract claim, must fail for similar reasons. Just as there was no evidence of a meeting

14

of the minds as needed for a breach of contract claim, there is no evidence of a false representation as needed for a fraud claim. *Hoffman v. Stamper*, 867 A.2d 276, 292 (Md. 2005). As the district court noted, the post-merger communications simply do not provide "evidence of any kind of fraud." J.A. 371. M&T, in response to Mary Kirgan's letter, summarized an undisputed provision of the will without elaboration. This is not a false representation.

Similarly, M&T is not estopped from arguing that it cannot be removed as corporate trustee without cause. Because M&T's communications with Mary Kirgan never promised, or even suggested, that it could be removed without cause, neither the promissory nor equitable estoppel requirements are met. *Pavel Enters.*, 674 A.2d at 532; *Knill v. Knill*, 510 A.2d 546, 549-50 (Md. 1986).

IV.

Before the district court, the Kirgans asserted that M&T breached its fiduciary duty under Maryland law. The Kirgans sought compensatory and punitive damages for the alleged breach. The district court, after conducting a bench trial, found no breach. The Kirgans argue on appeal that the court erred when it conducted a bench trial on this claim instead of sending it to a jury. We review a party's claim that it was denied its right to a jury trial de novo. *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 827 (4th Cir. 1994). We conclude here that the district court did not err by holding a bench trial.

"It is firmly established that the Seventh Amendment right to trial by jury attaches to civil actions that are legal, not equitable, in nature." *Fowler v. Land Mgmt. Groupe, Inc.*, 978 F.2d 158, 163 (4th Cir. 1992). The Kirgans argue that their breach of fiduciary duty

15

claim is legal, despite conceding that their Count II claim—requesting M&T's for-cause removal for, in essence, breaching its fiduciary duty—is equitable. The district court held that the breach of fiduciary duty claim also "lies in equity." J.A. 371-72. We agree.

To determine whether a state-created claim is legal or equitable in a diversity case, we look to federal law, *Simler v. Conner*, 372 U.S. 221, 222 (1963) (per curiam), which supplies a two-part test, *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989). First, we compare the "action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Granfinanciera*, 492 U.S. at 42 (quotation omitted). This first part weighs against the right to a jury trial here, since, as a general rule, "breach of fiduciary duty claims were historically within the jurisdiction of the equity courts." *Pereira v. Farace*, 413 F.3d 330, 338 (2d Cir. 2005).

"Second, we examine the remedy sought and determine whether it is legal or equitable in nature." *Granfinanciera*, 492 U.S. at 42 (quotation omitted). This second part weighs even more strongly against the right to a jury trial than the first. As noted above, the Kirgans' breach of fiduciary duty claim arises under Maryland law. A federal court "adjudicating a State-created right"—such as this one—"solely because of the diversity of citizenship of the parties . . . cannot afford recovery if the right to recover is made unavailable by the State." *Guar. Tr. Co. v. York*, 326 U.S. 99, 108-109 (1945); *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 407-408 (2010) (plurality). We must therefore look to Maryland law to determine the remedies available for a breach of fiduciary duty claim.

16

Although the Kirgans purport to seek legal relief, compensatory and punitive damages, Maryland law dictates that only equitable relief is available for this claim. When the Kirgans bring a breach of fiduciary duty claim against co-trustee M&T, they do so on behalf of the trust's beneficiaries, or, to be more precise here, on behalf of the trust and its potential beneficiaries. *See* Appellants' Opening Br. at 24; *see also Killen v. Houser*, 210 A.2d 527, 531 (Md. 1965); Restatement (Second) of Trusts § 200 cmts. a, e (1959). As a result, the Kirgans are bound by the same limitations as a beneficiary bringing a claim against a trustee. *See Killen*, 210 A.2d at 531; Restatement (Second) of Trusts § 200; *id.* at §§ 197-99.

Maryland law dictates that "the remedies of the beneficiary against the trustee are exclusively equitable," subject to "exceptions . . . [which] arise where the trustee's duty is immediately and unconditionally to pay money or to transfer a chattel to the beneficiary." *Kann v. Kann*, 690 A.2d 509, 516 (Md. 1997) (quotation omitted); *see also* Restatement (Second) of Trusts § 198. Since neither exception is applicable here, the Kirgans' breach of fiduciary duty claim, brought against a trustee under Maryland law, may seek only equitable relief.

Because the Kirgans cannot convert an equitable claim into a legal one by seeking unavailable relief, their breach of fiduciary duty claim is, by default, equitable in nature. There was no right to a jury trial on this claim.

* * *

For the reasons set forth above, the Kirgans' appeals lack merit. We thus affirm the judgment of the district court.

17

AFFIRMED

QUATTLEBAUM, Circuit Judge, concurring in part and dissenting in part:

I am pleased to join in much of the majority's analysis. I agree that the district court properly granted summary judgment in favor of M&T Bank on the breach of contract and fraud claims.[1] I also agree that the district court did not err in not submitting the breach of fiduciary duty claim to a jury.

However, I write separately on the narrow issue of the district court's declaratory judgment ruling that the Kirgan children, as individual trustees of the Plitt trust, may only remove M&T Bank for cause. Because I do not think Maryland fiduciary law compels the result reached by the district court and because I think Mr. Plitt's will unmistakably empowers the individual trustees to remove the corporate trustee with or without cause, I would reverse the district court on this issue and hold that the Kirgan children may remove M&T Bank with or without cause.

---

[1] While I would affirm the district court's grant of summary judgment in favor of M&T Bank on the breach of contract claim, I would do so for a slightly different reason than the majority. The record indicates that there is a genuine issue of material fact as to whether Mary Kirgan and M&T Bank reached a meeting of the minds concerning her removal power in 2003. M&T Bank's own internal document described an agreement between Mary Kirgan and M&T Bank to that effect, noting "[r]ather than get involved in a lawsuit, we signed an agreement that Mrs. Kirgan could remove us as Trustee without any cause, whereas the previous court order required cause for removal." J.A. 115. At a minimum, this evidence raises a genuine issue of material fact as to a meeting of the minds. However, like the majority, I conclude that, even if there was a meeting of the minds in 2003, Mary Kirgan and M&T Bank could not modify the terms of the will or trust through contract. Consequently, the district court was correct to grant summary judgment in favor of M&T Bank on the breach of contract claim.

## I.

Before explaining why I would reverse the district court's declaratory judgment ruling, some background is in order. I begin, where we should, with the terms of Clarence Plitt's will, which authorized the creation of the Plitt trust. Although much attention has rightly been given to the arguments of the Kirgan children and M&T Bank as trustees, I fear we have overlooked the original intent of Mr. Plitt—the trust's creator.

Mr. Plitt executed his will in 1976. In it, he authorized the creation of the trust for the laudable purpose of providing grants to educational institutions to make need-based student loans. In the will, Mr. Plitt outlined the responsibilities of the trustees on a variety of matters, ranging from the trustees' role in providing charitable disbursements to educational institutions to the removal power of the individual trustees at issue here. From the language of the will, his intent as testator on the issue before us—the ability of the individual trustees to remove the corporate trustee—is plain. Mr. Plitt intended that the individual trustees, acting jointly, should be able to remove the corporate trustee with or without cause. Item Four L. of the will provides that the individual trustees "may by their joint action, change any corporate Trustee serving hereunder and appoint a new successor corporate Trustee to serve in its place and stead." J.A. 94. This provision places only one limitation on the individual trustees' removal power—the requirement that the individual trustees act jointly to remove the corporate trustee. It imposes no additional limitations. It certainly cannot be read to impose a for cause limitation on their removal power. Perhaps recognizing the clear language of the will, M&T Bank does not and cannot argue that its position is supported by Mr. Plitt's intent as testator. It instead relies solely on the 1985

order. Setting aside the effect of the 1985 order for now, under the plain language of the will, it is clear Mr. Plitt intended that the individual trustees "may by their joint action" remove the corporate trustee with or without cause.

To me, starting the analysis with Mr. Plitt's intent is critical. Under Maryland law, the paramount concern of a court in interpreting a will is "to ascertain and effectuate the testator's intent." *Pfeufer v. Cyphers*, 919 A.2d 641, 645 (Md. 2007) (quoting *Emmert v. Hearn*, 522 A.2d 377, 379 (Md. 1987)). Ordinarily, the testator's expressed intent is discerned from the four corners of the will itself, giving the words of the will their plain meaning. *Id*. So far as possible, I believe our decisions concerning the dispute between the Kirgans and M&T Bank should be made with Mr. Plitt's intent in mind.

## II.

I turn next to the effect of the 1985 Maryland court order. Almost a decade after Mr. Plitt died, the originally named individual trustee—Mary Kirgan—and the originally named corporate trustee—the First National Bank of Maryland—petitioned the Circuit Court of Baltimore City for the will to be "clarified to provide the Corporate Trustee may only be removed 'for cause.'" J.A. 95–96. The reasons for this petition are not clear from the record. But what is clear is that, while the petitioners claimed to only seek a clarification of the terms of the will, the effect of the 1985 petition and order is actually a change or a modification of the terms of the will itself—a change inconsistent with the plain language of Mr. Plitt's will.

21

Importantly, under Maryland law, "[i]t is clear beyond question that subject to rare exception a court of equity has no power to rewrite or amend a decedent's will." *Shriners Hosps. for Crippled Children v. Md. Nat'l Bank*, 312 A.2d 546, 573 (Md. 1973) (internal quotation marks omitted). Likewise, a court may modify a trust only if "facts and circumstances exist that could not have been foreseen by the testator and that as a result of that lack of foresight, the beneficiary will suffer loss." *Probasco v. Clark*, 474 A.2d 221, 223 (Md. Ct. Spec. App. 1984). Courts have traditionally been reluctant to modify a trust because they attempt to effectuate the wishes of the settlor, recognizing that a settlor "can dispose of his property as he likes; his wishes in creating the trust being paramount to the wishes of the beneficiaries." *Id.* The majority summarizes this law well. "Even courts lack the power to modify the terms of a trust unless 'facts and circumstances exist that could not have been foreseen by the testator and that as a result of that lack of foresight, the beneficiary will suffer loss.'" Maj. Op. at 14 (quoting *Probasco*, 474 A.2d at 223).

Despite the high standard of giving priority to the intent of the testator or settlor in modifying the terms of the will or the trust, the Maryland court granted the petition of Mary Kirgan and the First National Bank of Maryland. It declared that "the individual Trustees acting jointly pursuant to Item Four L. of the Last Will and Testament of Clarence M. Plitt do not have the power to remove the originally named corporate Trustee, except for cause." J.A. 104.

Frankly, I have concerns about whether the 1985 order properly falls within the standards set forth under Maryland law for modifying wills and trusts. But that issue is not before us and, in the interest of comity, I do not challenge the validity of that state court

22

order. Nevertheless, in resolving the dispute that is before us, the 1985 order should be construed narrowly in light of Mr. Plitt's intent and the general presumption against modifications of wills and trusts under Maryland law.[2] With these considerations in mind, I turn to district court's holding that the will, as modified by the 1985 order, provides that M&T Bank may only be removed for cause.

III.

The district court's holding appears to be largely based on provisions of Maryland estates and trust law. The court first found that M&T Bank was a "successor trustee" under Maryland law. J.A. 370. It then found that M&T Bank, as a successor trustee, should be substituted for First National Bank of Maryland in the will and in the modification of the will set forth in the 1985 order. Accordingly, the district court held the will, as modified, provides that the Kirgan children do not have the power to remove M&T Bank, except for cause.

Although the district court did not explain its reasoning in detail, it seemed to rely on Section 15-1A-02 of the Maryland Code, Estates and Trusts, which was enacted in 1989,

---

[2] An additional reason for narrowly construing the 1985 order can be found in Item One of Plitt's will, which provides "I direct that no Court of Law or Equity shall take or have any jurisdiction pertaining to the administration of my estate or the trust created hereunder other than as may be required by law; and in the event that the said estate or trust become subject to the jurisdiction of such court in connection with any particular matter, I desire that jurisdiction to cease and terminate after the court has decided or resolved that matter." J.A. 90.

thirteen years after Mr. Plitt executed his will, in reaching this conclusion.[3] Three provisions of Section 15-1A-02 are potentially relevant to the district court's analysis. First, Section 15-1A-02(a) provides, "a successor fiduciary shall be substituted as a fiduciary for its predecessor corporate fiduciary, immediately upon the adoption of a corporate resolution by both the successor fiduciary and the predecessor corporate fiduciary providing for the substitution." Md. Code Ann., Est. & Trusts § 15-1A-02(a). Second, Section 15-1A-02(b) provides a successor fiduciary "shall have all the rights, powers, duties, and obligations of the predecessor corporate fiduciary." Md. Code Ann., Est. & Trusts § 15-1A-02(b). And third, Section 15-1A-02(c) provides a successor fiduciary "shall be deemed named as fiduciary in any writing, including a will, trust, court order, or similar document or instrument that names the predecessor corporate fiduciary as fiduciary, whether executed before or after the successor fiduciary is substituted, unless the writing expressly provides otherwise." Md. Code Ann., Est. & Trusts § 15-1A-02(c).

But under Section 15-1A-02, M&T Bank should not be substituted for the "originally named corporate Trustee" in the 1985 order. First, the statute was enacted thirteen years after Mr. Plitt's will was executed and four years after the 1985 order was issued. Generally, under Maryland law, statutes are presumed to apply prospectively unless the legislature clearly expresses an intent that the statute apply retroactively. *See Pautsch v. Maryland Real Estate Comm'n*, 31 A.3d 489, 509 (Md. 2011). Section 15-1A-02

---

[3] The district court appeared to invoke the language of Section 15-1A-02(b) in reaching this holding.

24

contains no express language applying the statute retroactively. Consequently, I question its retroactive application to a will and an order that substantially pre-dates its date of enactment.

Second, even if that statute applies to the will and the order, the district court did not give proper consideration to subsection (c), which provides that a successor fiduciary should not be substituted for a predecessor fiduciary if "the writing expressly provides otherwise." Md. Code Ann., Est. & Trusts § 15-1A-02(c). The will and the 1985 order expressly provide otherwise, especially when the two documents are construed together.

Mr. Plitt's will distinguishes between categories of trustees. Some portions of the will broadly reference corporate trustees and individual trustees generally. *See* J.A. 94. These broad references can be construed to include not only the identified, original trustees but also any future trustees. However, other portions of the will reference specific, identifiable trustees, such as the original corporate trustee—the First National Bank of Maryland. *See* J.A. 93. Thus, through its own terms, the will distinguishes between broad categories of present and future trustees and more specific categories of present, identifiable trustees.

These distinctions are important in interpreting the 1985 order, which for the reasons discussed above, should be construed narrowly. As previously noted, the 1985 order modified Item Four L. of the will, which provides that "[t]he individual Trustees serving at any time hereunder may by their joint action, change any corporate Trustee serving hereunder and appoint a new successor corporate Trustee to serve in its place and stead." J.A. 94. This provision references a broad category of corporate trustees, encompassing

25

not only the present corporate trustee but also any future corporate trustees, such as M&T Bank. The 1985 order modified this provision to provide that "the individual Trustees acting jointly pursuant to Item Four L. of the Last Will and Testament of Clarence M. Plitt do not have the power to remove the originally named corporate Trustee, except for cause." J.A. 104. In contrast to the will's broad language, the 1985 order expressly limited its effect to a single, identifiable trustee—the originally named corporate trustee, the First National Bank of Maryland. The district court's decision that M&T Bank should be substituted for the originally named corporate trustee fails to give proper consideration to the very narrow modification of the will declared in the 1985 order.

The significance of this narrow modification is highlighted when compared to Mary Kirgan and the First National Bank of Maryland's petition to the Baltimore court. They petitioned the court to clarify that Item Four L. of the will allowed "the Corporate Trustee" to be removed only for cause. J.A. 96. In other words, they sought a broad modification that would apply to any corporate trustee, not just the originally named corporate trustee. Had the Baltimore court granted that request, the district court might have been correct here.[4] But the court declined to adopt such a broad modification, limiting the "for cause" modification to the "originally named corporate Trustee." J.A. 104. This narrow language expresses an intent that the requirement of cause for removal—which once again is contrary to the original language of Mr. Plitt's will—only apply to the originally named

---

[4] Of course, granting that request would be even further at odds with Mr. Plitt's intent and might, for that reason, be questionable under Maryland law.

26

corporate trustee. Thus, the 1985 order should be viewed as exclusively applying to the First National Bank of Maryland and not to any other corporate trustee. Whether or not M&T Bank is a successor trustee or a successor fiduciary, it certainly was not the originally named corporate trustee. To substitute M&T Bank for the originally named corporate trustee would conflict with the express and specific language in the 1985 order.

Given the will's careful distinctions between categories of trustees, the 1985 order's narrow language and the history of the 1985 petition, I would conclude that the will and 1985 order, taken together, expressly provide that M&T Bank should not be substituted for the First National Bank of Maryland in the will or 1985 order. To be sure, the 1985 order could have been more specific. For example, it could have said that that only the First National Bank of Maryland may be removed for cause and any successor fiduciary to it by virtue of a merger may be removed with or without cause. But Section 15-1A-02(c), even if it applies, cannot be expected to require such precision, especially with respect to documents executed years before the statute's effective date. Reading the will and 1985 order together, and giving proper deference to the intent expressed by Mr. Plitt, the 1985 order applies only to the First National Bank of Maryland. M&T Bank may be removed with or without cause under the terms of the will.

IV.

My view on the powers of the individual trustees to remove the corporate trustee is not and should not be construed as an endorsement of the conduct of the Kirgan children or as opposition to the conduct of M&T Bank. Likewise, it should not be construed as a

27

limitation on the obligations of fiduciaries under Maryland law. Indeed, those issues are not before us. The key issue to me is that we give proper respect to the intent of Mr. Plitt as expressed in the plain language of his will. Mr. Plitt intended that the individual trustees be able to remove the corporate trustee with or without cause. And because Maryland law does not compel a contrary result, I would seek to effectuate Mr. Plitt's intent and reverse the district court and hold that the Kirgans may remove M&T Bank with or without cause.